UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH WHITTAKER,

Petitioner,

-against-

MHR FUND MANAGEMENT LLC, MHR
INSTITUTIONAL ADVISORS II LLC, AND
MHR INSTITUTIONAL ADVISORS III LLC,

Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/28/2021___

20 Civ. 7599 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Petitioner, Keith Whittaker, brings this proceeding under the Federal Arbitration Act

("FAA"), 9 U.S.C. §§ 10 and 11, to vacate or modify a May 1, 2020 arbitration award, as

modified on June 19, 2020 (the "PFA"), and a June 21, 2020 supplemental award addressing

both parties' motions for sanctions in the form of attorneys' fees, and Petitioner's additional

request for a set-off of his vested interests (the "Sanctions Award"), which were issued in the

arbitration between Petitioner and Respondents, MHR Fund Management LLC, MHR

Institutional Advisors II LLC, and MHR Institutional Advisors III LLC (collectively, "MHR").

Pet., ECF No. 14.  MHR brings two motions: (1) to confirm the PFA and the Sanctions Award,

ECF No. 38; and (2) to confirm the final award issued on November 3, 2020 (the "Final Award"

and collectively with the PFA and the Sanctions Award, the "Awards"), ECF No. 44.  For the

reasons stated below, MHR's motions are GRANTED, and the petition is DISMISSED.

## BACKGROUND[1]

MHR is a private investment firm with approximately $5 billion in assets under

management.  Resp. 56.1 ¶ 1, ECF No. 58.  Petitioner was employed by MHR from January

---

[1] Citations to a paragraph in the Rule 56.1 statement also includes the other party's response.  The record refers to
Petitioner as "Respondent" and MHR as "Claimant."

2006 to July 2018.  *Id.* ¶ 2.  On February 27, 2009, the parties entered into a restrictive covenant agreement (the "RCA") which contains an arbitration clause subjecting certain disputes to binding arbitration.  *Id.* ¶¶ 3–4.  The RCA defines "dispute" to encompass "all legal claims, disputes, or issues that relate to or arise out of the employment of [Petitioner] by [MHR] or the termination of that employment," but excludes eight categories of claims, including claims by MHR for (1) injunctive and/or other equitable relief, including "such claims for unfair competition and/or the use or unauthorized disclosure of . . . confidential information"; and (2) money damages "related to claims for unfair competition and/or the use or unauthorized disclosure of . . . confidential information."  RCA ¶¶ I(2)–(3), ECF No. 40-4.

Petitioner resigned from MHR on July 11, 2018.  Pet. 56.1 ¶ 9, ECF No. 56.  By letter dated August 17, 2018, MHR informed Petitioner that MHR had become aware that, after Petitioner resigned, he was "engaging in efforts to launch a new fund . . . with at least two other former MHR employees," and advised Petitioner that such actions were in "direct violation" of his contractual obligations to MHR under the RCA.  ECF No. 40-7 at 2.  On August 30, 2018, MHR commenced an arbitration proceeding against Petitioner before the International Institute for Conflict Prevention and Resolution (the "CPR").  Resp. 56.1 ¶ 9.  Pursuant to the RCA, the arbitration was conducted in accordance with the CPR's Rules for Non-Administered Arbitrations (the "CPR Rules") and their Employment Dispute Arbitration Procedure.  ECF No. 40-12 at 2.  The CPR Rules provide that an arbitrator "shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," including to "jurisdictional challenges with respect to . . . the subject matter of the dispute."  Resp. 56.1 ¶ 17.

In the arbitration proceeding, MHR brought claims for (1) breach of certain restrictive covenants in the RCA; (2) breach of contract based on Petitioner's alleged failure to repay portions of his bonus, in accordance with a discretionary bonus agreement signed by the parties; and (3) breach of fiduciary duty based on Petitioner's alleged violations of his duty of loyalty. Resp. 56.1 ¶ 11; ECF No. 40-8 at 11.  MHR also sought a judgment: (1) declaring that the non-competition, non-solicitation, non-disparagement, and confidentiality provisions of the RCA were valid and enforceable in their entirety; and (2) declaring that pursuant to an agreement between the parties, Petitioner was required to repay certain tax advances made to him.  Resp. 56.1 ¶ 11; ECF No. 40-8 at 11.

On September 28, 2018, before an arbitrator was assigned, Petitioner submitted to the CPR a motion to dismiss MHR's claims, asserting in part that MHR's claims for breach of the RCA, breach of fiduciary duty, and its request for a declaratory judgment on the enforceability of certain provisions of the RCA were non-arbitrable because they were either "claims . . . for injunctive and/or other equitable relief, including . . . such claims for unfair competition and/or the use or unauthorized disclosure of . . . confidential information" or "claim[s] . . . for money damages related to claims for unfair competition" that were excluded from arbitration under the RCA.  Resp. 56.1 ¶¶ 18–19; Arb. Order on Mot. to Dismiss at 8, ECF No. 40-10.

The parties jointly selected Barbara A. Mentz to serve as arbitrator (the "Arbitrator"). Resp. 56.1 ¶ 12.  On October 18, 2018, Petitioner informed the Arbitrator that he had moved to dismiss the arbitration on jurisdictional grounds, arguing that certain claims "are not arbitrable under the operative agreement."  ECF No. 40-33 at 4.  On November 7, 2018, the Arbitrator asked with the parties whether Petitioner had submitted the motion to dismiss for judicial resolution, even though she "ha[d] the power to hear and determine challenges to [her]

jurisdiction" under the CPR Rules.  Resp. 56.1 ¶ 21 (alterations omitted).  Petitioner's attorneys

clarified that they "ha[d] submitted [Petitioner's] jurisdictional motion for decision by the

[A]rbitrator here and do intend it for [her] decision." *Id.* ¶ 22.  At the parties' November 19,

2018 pre-hearing conference, the parties agreed "that pursuant to Rules 8.1 and 8.2 of the CPR

Rules," the Arbitrator "ha[s] the power to determine [Petitioner's] jurisdictional challenge that

[MHR's] claims are not arbitrable." *Id.* ¶¶ 25–26.  On March 25, 2019, the Arbitrator issued a

25-page ruling on Petitioner's motion to dismiss.  Arb. Order on Mot. to Dismiss.  The Arbitrator

noted at the outset that the parties "confirmed that pursuant to Rules 8.1 and 8.2 of the CPR

Rules, as the Arbitrator, I have the power to determine [Petitioner's] [m]otion to [d]ismiss[.]" *Id.*

at 7.  She granted Petitioner's motion to dismiss with respect to MHR's claims for injunctive and

equitable relief, but denied with prejudice Petitioner's request for dismissal of MHR's claims for

money damages and a declaratory judgment.  *Id.* at 25.

On November 9, 2018, the Arbitrator provided the parties with a disclosure statement

describing certain contacts with two partners from Quinn Emanuel Urquhart & Sullivan, LLP

("Quinn Emanuel"), the firm representing MHR in this proceeding, and stated that these

relationships would not affect her impartiality or independence.  Resp. 56.1 ¶¶ 51–52.  The

Arbitrator provided a supplemental disclosure on August 30, 2019, stating that she was asked to

serve as a replacement arbitrator on a separate arbitration panel, which involved different parties

and issues from the parties here.  ECF No. 40-19 at 2.  She also disclosed that Quinn Emanuel

represented one of the parties in the other arbitration, and that Nicholas Rossman, a partner at the

firm and counsel for MHR in this proceeding, was lead counsel there.  *Id.*  Finally, she stated that

she "ha[d] not had any contact with the parties or their respective counsel, including Mr.

Rossman or anyone else from [Quinn Emanuel], in the other arbitration." *Id.*  Petitioner did not

inquire about the supplemental disclosure, or object to the Arbitrator's appointment in the other arbitration, or to her continued service in the parties' arbitration until August 2020.  Resp. 56.1 ¶ 56. Petitioner contends that it was not until then that he became aware of the circumstances giving rise to justifiable doubt regarding the Arbitrator's independence and impartiality.  *Id.*

Thereafter, following a four-day arbitration hearing and subsequent rounds of briefing, the Arbitrator issued the PFA on May 1, 2020.  *Id.* ¶¶ 30, 32, 34.  The Arbitrator awarded MHR money damages on its claim for breach of the RCA, its claim with respect to Petitioner's bonus agreement, and its claim for breach of fiduciary duty.  *Id.* ¶ 35.  The Arbitrator further stated that MHR "shall not have a declaratory judgment that the [RCA covenants] are valid and enforceable in their entirety," but granted MHR a declaratory judgment for portions of two covenants "for which there is a justiciable issue."  PFA at 79, ECF Nos. 40-1, 40-2.  The Arbitrator further dismissed without prejudice MHR's breach of contract claim with respect to the tax advances, finding that the claim was not ripe.  Resp. 56.1 ¶ 37.  The Arbitrator dismissed "[a]ll claims not expressly granted" in the PFA, with the exception of claims that were either "determined to be not ripe for determination, or were deferred for consideration to the Final Award," and granted no relief "on any of such claims."  *Id.* ¶ 39.  The Arbitrator held in abeyance the parties' respective requests for sanctions.  *Id.* ¶ 38.

MHR requested sanctions in the form of attorneys' fees against Petitioner and his counsel for alleged confidentiality breaches, Sanctions Award at 3, ECF No. 40-3, and Petitioner requested sanctions in the form of attorneys' fees plus "the value of the financial interest that [Petitioner] asserted MHR has already taken from him," including amounts allegedly "set off," on the ground that MHR "acted in bad faith" by bringing the arbitration, Resp. 56.1 ¶¶ 45–46. The parties agreed to bifurcate the Arbitrator's decisions on sanctions, and if granted, the amount

to be awarded to the prevailing party.  Final Award at 2, ECF No. 46-1.  On June 21, 2020, the Arbitrator issued the Sanctions Award, which granted MHR's request for sanctions, denied Petitioner's request, and deferred until her issuance of the Final Award the calculation of the amount to be awarded to MHR, consistent with the parties' wishes.  *Id.* ¶¶ 42, 44, 47.

On August 13, 2020, the Arbitrator informed the parties she planned to issue the Final Award by August 17, 2020, which would resolve the only issue left—the tabulation of MHR's attorneys' fees award.  *Id.* ¶ 57.  On August 14, 2020, via email, Petitioner's counsel raised questions as to the Arbitrator's participation in the second, unrelated arbitration, and any communications she had had with MHR's counsel concerning that matter.  ECF No. 40-20 at 2. The Arbitrator responded that she was "appointed as a replacement arbitrator;" that there was a stay in place when she was appointed; that the arbitration was resolved during the stay within seven weeks of her appointment; and that she spent less than 1.6 hours on the other arbitration before its closure.  ECF No. 40-24 at 2.  On August 19, 2020, Petitioner submitted a challenge to the CPR, stating there were "justifiable doubts regarding [the Arbitrator's] independence and impartiality" arising from her participation in the other arbitration.  Resp. 56.1 ¶¶ 61–62.

On September 15, 2020, Petitioner initiated this proceeding, seeking vacatur of the PFA and Sanctions Award in part, on the ground that the Arbitrator had demonstrated "evident partiality."  *Id.* ¶ 66; Pet.  On September 18, 2020, the CPR denied Petitioner's challenge.  Resp. 56.1 ¶ 65.  MHR filed a motion to confirm the PFA and Sanctions Award on October 30, 2020. *Id.* ¶ 67; ECF No. 42.  The Arbitrator issued the Final Award on November 3, 2020.  Resp. 56.1 ¶ 48.  On November 13, 2020, MHR filed a supplemental motion to confirm the Final Award. *Id.* ¶ 68; ECF No. 44.

**DISCUSSION**

I.    Legal Standard

Arbitration awards must be "given force and effect by being converted to judicial orders by courts," and courts can "confirm and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).  However, such review is not *de novo*, but instead "severely limited . . . so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Scandinavian Reins. Co. Ltd. v. St. Paul Fire & Marine Ins. Co*., 668 F.3d 60, 71–72 (2d Cir. 2012) (citations and quotation marks omitted).  To obtain vacatur of an arbitration award, parties "must clear a high hurdle."  *Id*. at 72 (citation and quotation marks omitted); *see also Blue Bell, Inc. v. Western Glove Works Ltd.*, 816 F. Supp. 236, 240 (S.D.N.Y. 1993) ("A party seeking to overturn an arbitral award is under a heavy burden to prove that the standards for such relief have been met . . . especially since it is the Second Circuit's policy to read very narrowly the courts' authority to vacate arbitration awards[.]" (citation omitted)).  There is "no general requirement that arbitrators explain the reasons for their award."  *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted).  "[T]he award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citation, emphasis, and quotation marks omitted).

Section 10 of the FAA provides specific grounds upon which an arbitration award may be vacated by a district court, including:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party were prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## II.   Vacatur of the PFA and Sanctions Award

Petitioner seeks an order vacating the PFA and Sanctions Award on four grounds.  Pet. ¶¶ 28–31.  The Court addresses each in turn.

### A.  Partiality

Petitioner first contends that the Awards should be vacated because the Arbitrator exhibited evident partiality toward MHR.  Pet. Mem. at 23–29, ECF No. 15.  Petitioner's basis for this claim is that the Arbitrator was invited to serve as an arbitrator in a separate proceeding where MHR's attorney was also serving as lead counsel, that MHR's counsel "engineer[ed] [this] opportunity," and that the Arbitrator did not adequately disclose the "key facts and documents relating to this opportunity."  *Id.* at 1.  Petitioner also contends that several of the Arbitrator's procedural and substantive rulings against him are further evidence of her bias.  *Id.* at 26–28.

The FAA provides that district courts may vacate an arbitral award where the arbitrator demonstrated evident partiality.  *Scandinavian Reins.*, 668 F.3d at 72.  Evident partiality may be found only "where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Id.* at 64 (citation and quotation marks omitted).  Adverse rulings alone rarely evidence partiality.  *Id.* at 75.

An arbitrator's failure to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties can provide a basis for the evident partiality standard to be met. *LGC Holdings, Inc. v. Julius Klein Diamonds*, 238 F. Supp. 3d 452, 467 (S.D.N.Y. 2017). However, the Second Circuit "[has] not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." *Lucent Techs. Inc.*, *v. Tatung Co.*, 379 F.3d 24, 28 (2d Cir. 2004) (citation omitted). And, the Second Circuit has cautioned courts against vacating awards "because of undisclosed relationships where the complaining party should have known of the relationship . . . or could have learned of the relationship just as easily before or during the arbitration rather than after it lost its case." *Id.* (citations and quotation marks omitted). Similarly, courts will not vacate awards where "a party has knowledge of facts possibly indicating [arbitrator] bias or partiality" but nevertheless chooses to "remain silent and later object to the award of the arbitrators on that ground." *LCG Holdings*, 238 F. Supp. 3d at 467–69 (citation omitted) (finding petitioners had waived partiality objection where the arbitrator had disclosed enough to put them on "inquiry notice" of relationships with business partners, yet petitioners had failed to further investigate or object to the issue). Moreover, it is "the materiality of the undisclosed conflict that drives a finding of evident partiality, not the failure to disclose or investigate *per se*." *Certain Underwriting Members of Lloyds of London v. Fla. Dep't of Fin. Servs.*, 892 F.3d 501, 506 (2d. Cir. 2018) (citations and alteration omitted). Courts will not vacate awards where the purported financial interest or financial relationship between an arbitrator and a party is indirect, general, or tangential. *Id.* at 507.

At the outset, after Petitioner commenced this proceeding, his "evident partiality" challenge was considered and rejected by an independent committee constituted by the CPR,

Resp. 56.1 ¶¶ 61, 65, under the less demanding "justifiable doubt" standard, ECF No. 40-9 ¶ 7.3. Even absent this decision, the Court finds that Petitioner's argument lacks merit. The Arbitrator explicitly disclosed the basis for Petitioner's challenge in her supplemental disclosure, stating that she was "asked to serve . . . as a replacement arbitrator," in an action with different parties, raising different issues, and where Rossman, MHR's attorney, was also the lead counsel. ECF No. 40-19 at 2. She further explained that she had had no contact with the parties or their respective attorneys, including Rossman and members of his firm. *Id.* At the time, or indeed in the months that passed, Petitioner did not object to, or even further question, the Arbitrator's disclosures.

Petitioner blames his inaction on the Arbitrator's initial failure to "invite[] input" from him, and her subsequent failure to disclose until August 2020 that she was, in fact, appointed in the other arbitration. Pet. Mem. at 11–12. The Court finds this argument unpersuasive. Even if, as Petitioner contends, the Arbitrator could have been more forthcoming by notifying the parties that she had actually been appointed to the panel, the August 2019 supplemental disclosure was sufficient to "at least . . . put [Petitioner] on inquiry notice." *LGC Holdings*, 238 F. Supp. 3d at 468. Yet, Petitioner waited for nearly a year and well after the issuance of the PFA to ask additional questions about the nature of the Arbitrator's involvement in the other matter. ECF No. 40-20 at 2; Resp. 56.1 ¶ 56. Where a party fails to "investigate, let alone object" even after being put on inquiry notice, his "belated cry of bias cannot now form a basis for setting aside the award." *LGC Holdings*, 238 F. Supp. 3d at 468–69 (citation and quotation marks omitted).

Moreover, the alleged conflict here—that the same lead attorney is involved in two arbitrations before the same arbitrator—cannot be construed to be "material." Indeed, courts in this Circuit have not even found evident partiality where arbitrators were concurrently serving in

a second arbitration that "overlapped in time, shared similar issues, involved related parties, and included a common witness," *Scandinavian Reins.,* 668 F.3d at 64 (citation and alterations omitted), or where an arbitrator sitting as a neutral in a first arbitration simultaneously served as the party-appointed arbitrator for one of the party's affiliates in a second arbitration, *Nat'l Indemnity Co. v. IRB Brasil Reseguros S.A.*, 164 F. Supp. 3d 457, 478 (S.D.N.Y. 2016).  Here, the Arbitrator was selected by the arbitration service provider as the "next ranked mutually acceptable arbitrator" in the unrelated arbitration after another member of the panel withdrew.  ECF No. 40-25 at 2.  The Arbitrator indicated she had no contact with Rossman "or anyone from his firm" concerning the other arbitration or the appointment process.  *Id*.  And ultimately, her participation in the other arbitration was limited to 1.6 hours of work.  ECF No. 40-24 at 2.  Petitioner's unsupported claim that MHR's lead counsel "engineer[ed]" the opportunity for the Arbitrator to serve in the second proceeding amounts to pure speculation.  Pet. Mem. at 1.  The relationship between the Arbitrator and MHR's lead counsel cannot justify vacatur of the Awards.

Finally, the Court rejects Petitioner's claim that the Arbitrator's procedural and substantive decisions favoring MHR demonstrate bias.  Pet. Mem. 26–28.  Without more, "adverse rulings alone rarely evidence partiality."  *Scandinavian Reins. Co.*, 668 F.3d at 75.

Accordingly, that portion of the petition seeking vacatur on the basis of evident partiality is DENIED.

### B.  Scope of Arbitrator's Powers

Petitioner next alleges that the Arbitrator exceeded the scope of her powers by: (1) addressing claims "related to unfair competition" that fell outside the parties' arbitration agreement, thus deciding claims she allegedly lacked the jurisdiction to resolve, Pet. Mem. at

29–34, and (2) basing her ultimate findings of liability against Petitioner on MHR's breach of loyalty claim "on the premise that [Petitioner] misused [MHR's] confidential information," despite the fact that she had similarly excluded claims related to misuse of confidential information from the arbitration, *id.* at 34–36.

The FAA permits vacatur of an arbitral award where the arbitrators "exceeded their powers."  9 U.S.C. § 10(a)(4).  But this Circuit "consistently accord[s] the narrowest of readings" to this provision.  *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted).  As such, the inquiry "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  *Id.* (citation omitted).

Generally, the question of arbitrability—that is, whether an issue or individual is subject to the jurisdiction of an arbitrator—belongs to the court.  *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986).  Along with the merits of a dispute, however, parties can agree to arbitrate the issue of arbitrability and leave it to the arbitrator to decide their jurisdiction. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  Moreover, where the parties have explicitly submitted the jurisdictional question to the arbitrator for a decision, "that finding . . . must be given the deference [by the court] accorded an arbitrator's decision on the merits," regardless of the court's impression of the accuracy of the arbitral decision.  *N.Y. Hotel & Motel Trades Council v. Hotel Nikko of New York, Inc.*, Nos. 91 Civ. 755, 91 Civ. 795, 1991 WL 168284, at *4 (S.D.N.Y. Aug. 22, 1991).  Under this deferential standard of review, unless Petitioner meets the high bar of showing that the Awards "d[o] not draw [their] essence from the agreement to arbitrate," and provided the Court finds the Arbitrator offers a "barely colorable justification for the outcome reached," the Court will uphold the Awards.  *Beijing Shougang*

*Mining Invest. Co. LTD. v. Mongolia*, 415 F. Supp. 3d 363, 370–71 (S.D.N.Y. 2019) (citations and quotation marks omitted).  But such deference is only warranted where there is "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability.  *First Options*, 514 U.S. at 944 (citation, quotation marks, and alterations omitted).

Normally, where parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005).  However, where an arbitration agreement itself "carves out certain issues from arbitration," that "delays application" of the chosen rules "until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided."  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014).

### 1.   Unfair Competition Claims

The RCA states that the arbitration would be conducted in accordance with the CPR Rules, which, in turn, provide that the Arbitrator "shall have the power to hear and determine challenges to [her] jurisdiction," including the "scope or validity" of the arbitration agreement, and the "subject matter of the dispute."  Resp. 56.1 ¶¶ 16–17.  But the RCA also explicitly carves out eight categories of claims from arbitration.  RCA ¶ I(3).  Thus, standing alone, Petitioner's agreement to the CPR Rules in the RCA does not constitute "clear and unmistakable evidence" of his intent to submit these arbitrability disputes to the Arbitrator, because there is a question as to whether claims potentially in those categories remain subject to arbitration.

That said, *NASDAQ*—and the cases like it that Petitioner relies on—arose in a distinct procedural context: the *outset* of an arbitration.  *See NASDAQ*, 770 F.3d at 1013 (appeal of

motion to preliminarily enjoin arbitration); *see also Microsoft Corp. v. Samsung Elecs. Co., Ltd.*, 60 F. Supp. 3d 525, 526 (S.D.N.Y. 2014) (denying motion to compel arbitration).  The present matter, however, arises at the *close* of a lengthy arbitration proceeding.  And, the record contains other indicia of "clear and unmistakable evidence" that the parties intended to commit this jurisdictional question to the Arbitrator—particularly Petitioner's repeated statements to that effect.  Petitioner initially raised these jurisdictional objections in a motion to dismiss in September 2018.  Resp. 56.1 ¶ 19.  Following the Arbitrator's initial appointment, Petitioner's counsel notified the Arbitrator "that [Petitioner] has moved to dismiss this arbitration on jurisdictional grounds as the claims . . . are not arbitrable under the operative agreement."  ECF No. 40-33, at 4.  The Arbitrator then expressly asked the parties whether they intended for her, rather than a court, to resolve the motion to dismiss, even though, as she noted, she "ha[d] the power to hear and determine challenges to [her] jurisdiction" under the CPR Rules.  Resp. 56.1 ¶ 21.  Petitioner's counsel then responded, clarifying that Petitioner had "submitted [the] jurisdictional motion for decision by the arbitrator here and does intend it for [her] decision."  *Id.* ¶ 22.  Thereafter, at a pre-hearing conference, the parties "confirmed that . . . the Arbitrator "ha[s] the power to determine [Petitioner's] jurisdictional challenge that [MHR's] claims are not arbitrable."  *Id.* ¶¶ 25–26.  Based on all this, the Arbitrator's ruling on the motion to dismiss reiterated the parties' confirmation that "as the Arbitrator[,] I have the power to determine [Petitioner's] [m]otion to [d]ismiss[.]"  Arb. Order on Mot. to Dismiss at 7.

At any of these junctures, Petitioner was free to seek a court order enjoining or staying the arbitration until resolution of his jurisdictional objections.  He did not.  Petitioner's instant challenge to the Arbitrator's jurisdiction appears to be entirely rooted in Petitioner's disagreement with the outcome of the arbitration.  *See Beijing Shougang Mining Invest. Co.,*

*Ltd.*, 415 F. Supp. 3d at 370 ("It cannot be said that, after starting the whole proceeding, framing the jurisdictional issue, participating for . . . years, and never objecting, [Petitioner] can *now* come to . . . court and claim that this question was not one for the arbitrators to decide." (emphasis in original)).  Raising these jurisdictional objections at this juncture as a basis to vacate the Awards amounts to an attempt to have a second bite at the apple—that is, to obtain this Court's *de novo* review of the jurisdictional claim.

The Court holds that there is clear and unmistakable evidence that the parties agreed the Arbitrator would determine Petitioner's jurisdictional objections.  Accordingly, the Court reviews the Arbitrator's findings on this issue with the same deference it accords the Arbitrator's findings on the merits.  The Arbitrator set forth her conclusions in a detailed opinion, and her analysis was based largely on the text of the RCA, thus clearly drawing its essence from the agreement to arbitrate.  *E.g.*, Arb. Order on Mot. to Dismiss at 17–25.  She offers multiple justifications for her conclusions that a narrow carve-out exempting "claims for unfair competition," a common-law tort, does not sweep broadly enough to encompass MHR's non-solicitation and duty of loyalty claims, which have markedly different elements under common law.  *Id.*  This is more than a barely colorable justification for the Arbitrator's conclusions, and thus passes muster under the Court's deferential standard of review.[2]

---

[2] Petitioner contends that two arbitrators in a separate arbitration proceeding between MHR and another of its former employees ruled on the same jurisdictional issue, but found that "most of MHR's claims were excluded from arbitration because they related to claims of unfair competition."  Pet. Mem. at 9 (quotation marks omitted).  This argument is unavailing.  Once this Court has determined that the parties submitted the jurisdictional question to the Arbitrator, and that the Arbitrator's ruling passes muster under the highly deferential standard set forth above, it will "not express an opinion on the accuracy of that analysis."  *Beijing Shougang*, 415 F. Supp. 3d at 371.  It is, therefore, immaterial that another arbitrator, in a separate proceeding, reached a different conclusion on a similar question.

2.   Misuse of Confidential Information Claims

Petitioner next alleges that the Arbitrator exceeded her powers because her "analysis and conclusion rests on the premise that [Petitioner] misused MHR's confidential information," even though claims related to misuse of confidential information were outside the arbitration under the RCA.  Pet. Mem. at 34–36.  Petitioner contends, for instance, that the Arbitrator supported her conclusion that Petitioner breached his duty of loyalty to MHR with factual evidence as to Petitioner's misuse of MHR's "confidential" case studies.  *Id.* at 35.

The RCA included a carve-out for "claims for . . . the use or unauthorized disclosure of . . . confidential information[.]"  RCA ¶ I(3).  MHR did not bring a specific claim for misuse or the unauthorized disclosure of its confidential information.  Similarly, the Arbitrator made clear that she did not "address . . . any issues regarding" and "made no determination as to the validity, enforceability, or breach of" the confidentiality provision once she determined this claim was not arbitrable.  PFA at 72 & n.33.  Instead, MHR's breach of loyalty claim rested on the assertion that Petitioner had "engag[ed] in a conspiracy with other . . . MHR employees to launch a competing fund . . . and by soliciting MHR employees."  ECF No. 40-8 ¶ 65.  The breach of loyalty claim is distinct from a claim for misuse of confidential information referenced in RCA Paragraph I(3), which is outside the Arbitrator's jurisdiction.  Moreover, a review of the Arbitrator's decision makes clear that even if some of the evidence she relied on to support her ultimate conclusions could separately support a claim for misusing confidential information, her ultimate basis for determining that Petitioner breached his duty of loyalty to MHR was predicated on the fact that Petitioner engaged in these activities while still employed by MHR. PFA at 71–72.  Petitioner cites no caselaw that supports his contention that an arbitrable claim is

rendered outside the scope of the Arbitrator's authority because some of the evidence she relied on could independently support a separate claim that was carved out from the arbitration.

Moreover, the Arbitrator made a number of factual findings supporting the breach of loyalty claim that arguably have little to do with Petitioner's misuse of confidential information, including finding the "relevant facts are not in dispute," for example, that Petitioner was identified as a "[c]o-[f]ounder" of his new rival fund, that he began the capital-raising process through meetings with placement agents for that fund, and that while traveling on business, Petitioner told certain of his contacts at MHR's portfolio companies that he was starting a new fund—all while still employed by MHR. *Id.* Therefore, Petitioner has not demonstrated that the Arbitrator's jurisdiction over MHR's breach of loyalty claim was in dispute. Because there is a clearly colorable basis for the Arbitrator's finding that Petitioner did, in fact, breach this duty, his argument for vacatur on this basis also fails.

Accordingly, that portion of the petition seeking vacatur on the ground the Arbitrator exceeded her powers is DENIED.

### C.  Finality of Awards

Petitioner next argues that the Arbitrator failed to make a "mutual, final, and definite award" as to three issues: first, that she dismissed without prejudice MHR's claim seeking a declaratory judgment requiring Petitioner to repay certain tax advances made to him; second, that she did not fully resolve MHR's declaratory judgment claim as to whether certain covenants in the RCA were valid and enforceable in their entirety; and third, that she failed to take into account MHR's set-off of Petitioner's interests in issuing her ruling on damages.  Pet. Mem. at 5, 36–40.

17

The FAA permits vacatur of an arbitration award "where the arbitrators . . .so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  *See also Rocket Jewelry Box v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 175 (2d Cir. 1998) (per curiam).  An arbitration award is final where it "resolve[s] all issues submitted to arbitration and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties."  *Id.* at 177 (alterations in original) (citation omitted).  But an award that "finally and definitively disposes of a separate independent claim may be confirmed although it does not dispose of all the claims that were submitted to arbitration."  *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).  Moreover, courts have recognized a distinction between "an arbitrator's failure . . . to dispose of the controversy submitted . . . and [her] failure . . . to consider all . . . issues of fact and law . . . .  The former renders an award not final and definite and thus subject to vacatur . . . the latter amounts to a mere error of fact or law, not judicially reviewable."  *Guetta v. Raxon Fabrics Corp.*, 510 N.Y.S.2d 576, 579 (N.Y. App. Div. 1987).

The plain language of the Awards speaks to their finality.  The PFA states that it is "final with respect to the matters specifically addressed herein" and that "[a]ll claims not expressly granted, except for those claims that were determined to be not ripe for determination, or were deferred for consideration to the Final Award, *are dismissed and no relief is granted on any of such claims*."  PFA at 80–81 (emphasis added).  The only issue "deferred for consideration" to the Final Award was the "[p]arties' respective motions for [s]anctions."  *Id.* at 80.  The Court finds—and Petitioner does not dispute—that this issue is "sufficiently separate that the [A]rbitrator['s] failure to resolve the question does not threaten the confirmation of the balance of the award."  *Advest, Inc. v. Asseoff*, No. 92 Civ. 2269, 1993 WL 119690 at *6 (S.D.N.Y. Apr.

14, 1993). The Final Award similarly states it is in "full settlement of all claims submitted to this Arbitration," and that "all claims not expressly granted herein are hereby denied." Final Award at 36. This language alone is sufficient to deny vacatur on the basis of finality. *See Schatz v. Cellco P'ship*, No. 10 Civ. 5414, 2016 WL 1717212, at *3 (S.D.N.Y. Apr. 28, 2016)

Petitioner argues that the Arbitrator's dismissal without prejudice to renewal of the tax advance issue lacks finality, but cites no authority demonstrating that a dismissal without prejudice does not constitute a "final" decision on the merits allowing confirmation. *E.g.*, *Krantz & Berman, LLP v. Dalal*, No. 09 Civ. 9339, 2011 WL 1810490, at *2, *5 (S.D.N.Y. May 12, 2011) (finding an award can be final "where an arbitrator dismisses some of the claims and disposes of others on the merits," and, therefore, confirming an award where the arbitrator dismissed a claim for contingent fees without prejudice), *aff'd* 472 Fed. App'x 76 (2d Cir. 2012).

Petitioner next argues that the Arbitrator failed to resolve MHR's declaratory judgment claim that certain covenants within the RCA were "valid and enforceable in their entirety." Pet. Mem. at 38–39. But the PFA demonstrates that Arbitrator did, in fact, render a final judgment on this claim—she plainly ruled that MHR "shall not have a declaratory judgment that [the relevant covenants] are valid and enforceable in their entirety." PFA at 79 (emphasis added). Specifically, she found that under New York law, she could only render a declaratory judgment when there is a "justiciable controversy" as to the parties' rights; that the "justiciable controversy" here was limited to Petitioner's specific breaches of provisions of the RCA; and that she could not issue a declaratory judgment for the covenants in their entirety "or with respect to the entire [RCA]" where they were "not part of the justiciable controversy." PFA at 26. On that basis, after detailed analysis of the "criteria used by New York courts as to whether a restriction is valid and enforceable," *id.* at 26–43, she concluded MHR was entitled to

declaratory judgment only on those portions of the covenants that implicated a "justiciable issue," but that it "shall not have a declaratory judgment" that the covenants were valid and enforceable in their entirety, *id.* at 79.

Petitioner's arguments do not actually center on finality—they amount to little more than a thinly-veiled collateral attack on the Arbitrator's legal analysis and conclusions.  Indeed, in a footnote to his finality arguments, Petitioner argues that the Arbitrator "disregarded the legal standard" in resolving MHR's declaratory judgment claim, Pet. Mem. at 39 n.25, an apparent reference to the Second Circuit's recognition that an arbitrator's decision may be vacated when it stands in "manifest disregard of [the] law."  *See Duferco Int'l Steel Trading v. T. Klaveness Shipping, A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (explaining "manifest disregard" standard).  However, it remains that an arbitrator's failure to consider all relevant factual or legal issues—or even legal errors—is distinct from her failure to "dispose of the controversy submitted," because the former is not judicially reviewable, *Guetta*, 510 N.Y.S.2d at 579, *see also United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38 (1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them . . . it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator[.]").  Thus, Petitioner has failed to show that the Arbitrator did not render a "final" ruling on MHR's declaratory judgment claim.

Finally, Petitioner argues that the Arbitrator failed to take into account evidence of MHR's set-off of Petitioner's vested interests in formulating the Sanctions Award.  Pet. Mem. at 37.  Petitioner requested sanctions against MHR in the form of attorneys' fees, plus "the value of the financial interest that [Petitioner] asserted MHR had already taken from him," including amounts allegedly "set off."  Resp. 56.1 ¶¶ 45–46.  Petitioner later suggested that the set-offs of

his interests could be used, in part, as an "appropriate benchmark" to assess "what amount of sanctions against [MHR]" is appropriate.  ECF No. 40-38 at 4.  It is plain that the Arbitrator did, in fact, issue a final ruling on Petitioner's request; she denied his request for sanctions "in all respects," and, therefore, did not need to consider the value of his set-offs in determining the amount of sanctions that were appropriate.  Sanctions Award at 27.  Again, Petitioner fails to appreciate the distinction between an arbitrator's failure to render a final determination on an issue submitted to her, which can be a basis for vacatur, and her failure to consider certain facts or issues in coming to her determination, which does not constitute a basis for vacatur under the Court's deferential standard of review.  *See Guetta*, 510 N.Y.S.2d at 579; *Misco*, 484 U.S. at 37–38.  Petitioner did not assert a separate claim for his set-offs that required determination by the Arbitrator, and the Arbitrator indisputably issued a final judgment on his request for sanctions where the value of his set-offs may have been considered.

Accordingly, that portion of the petition seeking vacatur on finality grounds is DENIED.

D.  Public Policy

Petitioner finally argues that the Awards violate New York's public policy "against forfeiture of earned wages" because Petitioner must forfeit "nearly $1 million in wages" between his regular compensation and bonuses.  Pet. Mem. at 40–42.

A court's ability to vacate an arbitration award on public policy grounds is extremely circumscribed.  A court's review on this front is "limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy."  *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (citation,

quotation marks, and alterations omitted).  On this basis, "[a] court is not authorized to revisit or

question the fact-finding or the reasoning which produced the award."  *Id.*

Petitioner first challenges the Arbitrator's determination that he was required to repay

$593,797 of his 2017 bonus, on the ground that this was an "earned wage," forfeiture of which,

under New York's "long-standing [public] policy," is not permitted.  Pet. Mem. at 41–42.

Established New York public policy disfavors forfeiture of earned wages.  *E.g.*, *Thomson v.*

*Saatchi & Saatchi Holdings (USA), Inc.*, 958 F. Supp. 808, 824 (W.D.N.Y. 1997), *aff'd* 159 F.3d

1348 (2d Cir. 1998).  In furtherance of that policy, New York also disfavors forfeiture of annual

bonuses where such bonus constitutes "an integral part of [Petitioner's] compensation package."

*Id.* at 824–25 (citation omitted).  But bonuses are not considered earned wages where they are

"entirely discretionary and subject to the non-reviewable determination of [the] employer."

*Truelove v. Ne. Capital & Advisory, Inc.*, 738 N.E.2d 770, 772 (N.Y. 2000).  And "whether

unpaid compensation constitutes a discretionary bonus or nonforfeitable earned wage is a

question of fact[.]"  *Kaplan v. Cap. Co. of America LLC*, 747 N.Y.S.2d 504, 504 (N.Y. App. Div.

2002).  Here, the Arbitrator made a clear factual finding that the bonus at issue "was in the

absolute and sole discretion" of MHR and, therefore, did not constitute earned wages protected

from forfeiture.  PFA at 63.  The Court will not revisit or question the fact-finding that produced

the Awards, and Petitioner cannot show that forfeiture of a discretionary bonus "creates an

explicit conflict" with New York laws and legal precedents.  *See Int'l Bhd. of Elec. Workers*,

143 F.3d at 716.  Therefore, vacatur on this basis is unwarranted.

Petitioner next challenges on public policy grounds the Arbitrator's finding that he was

required to forfeit $180,000 he received through a hedge fund distribution, because the interest

"vested . . . no later than December 31, 2017," and, therefore, was not "compensation earned"

during his period of faithlessness that would otherwise be subject to forfeiture.  Pet. Mem. at 41.

The Arbitrator found that Petitioner breached his duty of loyalty under the faithless servant

doctrine, and that under New York law, Petitioner was required to forfeit "all compensation that

[he] received from his first faithless act"—a period she determined to commence February 16,

2018.  PFA at 76.  She further made a factual determination that Petitioner's compensation in

that period included a salary of $204,807.69 and a hedge fund distribution of $180,000.  *Id.* at

77.  Accordingly, she concluded that the appropriate damages award was the total of those two

figures.  *Id.*  Again, Petitioner's dispute is with the Arbitrator's fact-finding, which is not subject

to revisiting or questioning by the Court—and he does not demonstrate that the Arbitrator's

decision was otherwise in contravention of established public policy.

Because Petitioner cannot show that the Awards violate public policy or explicitly

conflict with established New York law or legal precedents, that portion of the petition seeking

vacatur on this basis is DENIED.

III.    Confirmation of Awards

Under the FAA, the Court "must confirm an arbitration award unless it is vacated,

modified, or corrected as prescribed in §§ 10 and 11."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*,

552 U.S. 576, 582 (2008) (quotation marks omitted).  "[C]ourts must grant an arbitration panel's

decision great deference."  *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d

383, 388 (2d Cir. 2003).  Provided there is a "barely colorable justification for the outcome

reached," the reviewing court must confirm the award.  *Bear, Stearns & Co., Inc. v. 1109580

Ont., Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (citation omitted).

The Court has reviewed the record of the relevant arbitration proceedings and the

Arbitrator's well-reasoned determinations.  The Court has further denied each of Petitioner's

arguments for vacatur or modification of the PFA and Sanctions Awards, finding repeatedly that there is clearly a colorable justification for the Arbitrator's determinations.  In the Final Award, the Arbitrator merely tabulated the value of attorneys' fees she determined MHR was entitled to in the Sanctions Award, and Petitioner has not advanced any arguments for vacatur or modification that apply to the Final Award specifically.  There is clearly a "colorable justification" for the Arbitrator's determination in the Final Award—she awarded MHR approximately 40% of the amount it initially claimed based on a well-reasoned and detailed accounting of each class of fees sought by MHR.  *See* Final Award.

Accordingly, MHR's motion to confirm the PFA and the Sanctions Award and its supplemental motion to confirm the Final Award are GRANTED.

IV.     Post-Award, Pre-Judgment Interest, Post-Judgment Interest, and Costs

In addition to confirmation of the Awards,[3] MHR further seeks post-award, pre-judgment interest of 9% on all amounts awarded (that is, pre-judgment interest accruing from the date of the relevant Award to the date of this order), post-judgment interest on each amount awarded, and costs in connection with the proceeding, under Rule 54(d)(1).  ECF No. 44 at 1–2; PFA at 80.  Petitioner argues the Court should exercise its discretion and deny MHR post-award, pre-judgement interest, and its costs in connection with this action.  Pet. Reply at 23–24, ECF No. 50.

A.  Post-Award, Pre-Judgment Interest

"Post-award, pre-judgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest."  *Glob. Gold Mining LLC v.*

---

[3] By confirming the PFA, the Court also confirms the Arbitrator's award of 9% pre-award interest dating back to July 19, 2018, on MHR's breach of covenant claim, ECF No. 40-17 at 5–6, and July 30, 2018, on its bonus repayment claim.  *See* PFA at 80.

*Caldera Res., Inc*., No. 18 Civ. 4419, 2019 WL 367824, at *6 (S.D.N.Y. Jan. 30, 2019) (citation

omitted).  "[T]he common practice among courts within the Second Circuit is to grant interest at

a rate of nine percent per annum—which is the rate of prejudgment interest under New York

State law, N.Y. C.P.L.R. §§ 5001–5004—from the time of the award to the date of the judgment

confirming the award."  *SEIU, Local 32BJ v. Dayton Beach Park No. 1 Corp*., No. 18 Civ. 3887,

2019 WL 120998, at *4 (S.D.N.Y. Jan. 4, 2019) (citation omitted).  Although Petitioner argues

that the Court should deny MHR post-award interest, Petitioner identifies no basis for

overcoming this presumption, other than contending the Awards are "woefully deficient" and

asserting that he acted in "good faith" in prosecuting this action—as most litigants surely intend

to do.  Pet. Reply at 24.  Accordingly, the Court will award to MHR post-award, pre-judgment

interest from May 1, 2020, to the date of this order on the full amount of the PFA; and from

November 3, 2020, on the full amount of the Final Award.[4]

### B.  Post-Judgment Interest

28 U.S.C. § 1961(a) mandates post-judgment interest "on any money judgment in a civil

case recovered in a district court."  Because the Court's confirmation of the Awards is a money

judgment in a civil case, MHR is entitled to post-judgment interest at the statutory rate, to be

calculated from the date of the entry of this order.  28 U.S.C. § 1961(a).

### C.  Costs

Having achieved a judgment in its favor, MHR is the prevailing party here, and is,

therefore, entitled to recover reasonable costs in connection with this proceeding, Fed. R. Civ. P.

---

[4] MHR seeks $121,190.19 in payment of attorneys' fees from Petitioner, as well as "post-Award interest of 9.0% from November 3, 2020, to the date such attorneys' fees awarded are paid in full."  Resp. Supp. Mem. at 7, ECF No. 45.  The Arbitrator, however, awarded "post-Award interest . . . at the New York statutory rate of interest" of 9% annually on this amount, which the Court interprets as a grant of post-award, pre-judgment interest at the statutory rate accruing from the date of entry of the Final Award—November 3, 2020.  Final Award at 7.  Accordingly, MHR is entitled to 9% post-award, pre-judgment interest of 9% on this amount, plus post-judgment interest at the statutory rate, as described.

54(d)(1), and Petitioner provides no reason beyond an assertion his claims were brought in "good faith" to justify denying an award of MHR's costs, Pet. Reply at 24.  MHR has not, however, provided the Court with an application for such costs such that the Court may assess whether the requested costs are recoverable under Rule 54(d) and otherwise reasonable.  Accordingly, MHR shall submit an application for its costs by **October 12, 2021**.

## CONCLUSION

Accordingly, the Petition is DISMISSED.  MHR's motion to confirm the PFA and Sanctions Award is GRANTED.  MHR's supplemental motion to confirm the Final Award is GRANTED.  The Clerk of Court is directed to enter judgment against Petitioner in the amounts of (1) $1,574,627.00 plus 9.0% pre-judgment interest from July 19, 2018, to the date of judgment; (2) $593,797.50 plus 9.0% pre-judgment interest from July 30, 2018, to the date of judgment; (3) $384,807.69, plus 9.0% pre-judgment interest from May 1, 2020, to the date of judgment.  The Clerk of Court is also directed to enter judgment against Petitioner in the amount of $121,190.19 in attorneys' fees, plus 9.0% pre-judgment interest from November 3, 2020, to the date of judgment.  The Clerk of Court is further directed to enter post-judgment interest at the statutory rate on each of the foregoing from the date of this judgment.  The Clerk of Court is further directed to terminate the motions pending at ECF Nos. 38 and 44, and to close the case.

SO ORDERED.

Dated: September 28, 2021
      New York, New York

_____
ANALISA TORRES
United States District Judge